CITY OF ASHEVILLE v. WOODBERRY ASSOCIATES, LTD.

No. 9328SC499

(Filed 19 April 1994)

**1. Environmental Protection, Regulation, and Conservation § 124 (NCI4th); Municipal Corporations § 147 (NCI4th)— land disturbing activities—project not funded by state or federal funds—jurisdiction of city to regulate**

An apartment development project was not funded in whole or in part by the State or the United States so as to deprive plaintiff city of the authority under N.C.G.S. § 113A-56 to regulate land disturbing activities on the project site where (1) HUD insured the loan on the project and later purchased the note and deed of trust, since any money provided by HUD was not used for construction of the project, and any "land disturbing activity" occurred before HUD purchased the note and deed of trust; or where (2) a grant was received from the Appalachian Regional Commission, since the grant monies were not used to fund any "land disturbing activities" on the project site but instead were used to install water and sewer lines to the project site. Therefore, the city had jurisdiction to impose a civil penalty on the apartment owner and developer for violations of the city's soil erosion and sedimentation control ordinance.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 98 et seq.; Pollution Control §§ 185, 248 et seq., 277 et seq.**

**2. Judgments § 38 (NCI4th)— judgment signed out of session— apparent consent by fair implication—judgment not null and void**

It appeared by fair implication that the parties consented to the entry of judgment outside the session where the record showed that at the end of the trial which occurred on Wednes-

day, 9 December 1992, the judge indicated that it might be "a week or so" before he decided the case, there was no objection, and the judge signed the judgment on 9 January 1993.

**Am Jur 2d, Judgments § 60.**

Judge ORR concurring.

Appeal by defendant from order entered 24 August 1992 by Judge John Mull Gardner and judgment entered 9 January 1993 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 10 February 1994.

*Nesbitt & Slawter, by William F. Slawter, City Attorney, and Martha Walker-McGlohon, Associate City Attorney, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Albert L. Sneed, Jr., for defendant-appellant.*

GREENE, Judge.

Woodberry Associates, Ltd. (defendant) appeals from an order denying its motion to dismiss and from a judgment requiring it to pay $90,910 as a penalty for failing to comply with the City of Asheville's (the City) "Soil Erosion and Sedimentation Control" ordinance (the ordinance).

Defendant is a Virginia limited partnership doing business in North Carolina. The general partners of the partnership are Poff Construction Company, Inc., and N. Thomas Poff. Defendant is the owner and developer of the Woodberry Apartments (the project), a multi-unit apartment complex built within the City.

Prior to beginning construction of the project, defendant obtained permits from the City allowing it to perform grading operations on lot 56 (the project site) in accordance with the City's ordinance. Prior to any construction activity on the project site, it was described as "very rocky and very steep" with trees. During the construction of the project most of the trees were removed and the slopes were "cut" and "filled" to accommodate the construction of the apartments, the swimming pool, and the parking lots. In 1987, construction of the project was completed and the City determined that the defendant had complied with the ordinance.

The total cost of the project was $5,593,404, of which $4,865,600 was financed by issuance of bonds by the City Housing Authority. The bonds were secured by a deed of trust on the project site which was insured by the United States Department of Housing and Urban Development (HUD) pursuant to 12 U.S.C. § 1701 *et seq.*, commonly known as the National Housing Act. A $15,000 grant from the Appalachian Regional Commission (ARC), distributed through the North Carolina Housing Finance Agency (NCHFA), was received by the defendant to be used for "sewer and water line extensions to the [project] site." Although there was some dispute in the evidence as to whether the $15,000 was actually used to pay for the water and sewer lines, the trial court found as fact that these monies were "used . . . in sewer and water line extensions," and there is no assignment of error relating to this finding. The ARC is a federally established commission whose purpose is generally to foster economic growth and prosperity in the Appalachian region. 40 U.S.C. App. § 101 (1988). The NCHFA is a state agency established in part to "provide financing for residential housing construction . . . for sale or rental to persons and families of lower income." N.C.G.S. § 122A-2 (1986). On 14 April 1989, both general partners of the partnership filed a Chapter 11 proceeding with the federal bankruptcy court in Virginia. In August 1990, the deed of trust was purchased by HUD and at the time of trial continued to be owned by HUD. Since 1989, the project has been managed by PCI Management, Inc. under a management agreement approved by HUD.

In the spring of 1989, heavy rains resulted in several slope failures at the project site which in turn caused both on-site and off-site sedimentation problems. In late May of 1989, the erosion control officer for the City inspected the project site and found several violations of the City's erosion and sedimentation control ordinance. Among the problems at the project site were slippage of the cut slopes on the southeast side of the project, erosion and slippage of the fill slopes on the northwest side of the project, and sedimentation caused by the on-site erosion. Despite expenditures of over $160,000 made to bring some portions of the project site into compliance, at the time of trial, it remained in violation of the ordinance.

The City filed a complaint in the Superior Court of Buncombe County on 9 April 1991 seeking to collect penalties for failure of the defendant to take protective action to control the erosion

and sedimentation which was occurring and seeking an injunction restraining defendant from violating the provisions of the ordinance. Defendant moved to dismiss the complaint on the grounds that the City had "no jurisdiction over this matter" under N.C. Gen. Stat. § 113A-56(a)(5) because the deed of trust was owned by HUD. This motion was denied by Superior Court Judge John Mull Gardner on 24 August 1992. In denying the motion, Judge Gardner noted that "N. C. Gen. Stat. sec. 113A-56 . . . does not prevent . . . [the City] from enforcing its soil and sedimentation ordinance against a project whose mortgage has been federally insured."

The case was called for trial at the 9 December 1992 session of Superior Court in Buncombe County before Judge C. Walter Allen. Before evidence was taken on the issues raised in the complaint, the defendant orally moved to dismiss the complaint on the grounds that the court was without jurisdiction because the project was constructed in part with funds from the $15,000 ARC grant (ARC grant). The trial court reserved its ruling on the motion to dismiss and allowed the parties to present evidence on the issues raised in the complaint. At the end of the evidence the trial court stated:

> THE COURT: All right. So I'll have to let you hear from me, Ladies and Gentlemen. And I'll have to go through these exhibits. Some I've already looked at. Some I don't have to, of course. And I'll let you hear from me. Probably be a week or so.

On 9 January 1993, the trial court signed a judgment concluding that the City had jurisdiction "over the Defendant's land disturbing activities," that "Defendant is in violation of the City . . . Ordinances governing land disturbing activities," and that "Defendant failed to take proper corrective measures to prevent further erosion." The defendant was ordered to pay the City a civil penalty of $90,910. There is nothing in this record that indicates that the judgment was entered at any time prior to 9 January 1993.

---

The issues presented are whether (I) any portion of the construction of the project was "funded in whole or in part by the State or the United States" thereby depriving the City of the authority under N.C. Gen. Stat. § 113A-56 to regulate the project; and (II) the judgment is void because it was signed out of session.

Although the City approved the sedimentation and erosion control measures which the defendant had installed by the completion of the project, the defendant nonetheless was required, under Section 8-83 of the ordinance, to "take additional protective action" if the City determined "that significant erosion and sedimentation continue[d] as a result of [the] land-disturbing activity." In this case, the City claims, and the trial court concluded, that the defendant has failed to take the "additional protective action" needed to prevent erosion and sedimentation resulting from the "land-disturbing activity" which occurred during the construction of the project. The defendant does not contest this conclusion by the trial court. The defendant only assigns error to the determination by the trial court that the City has jurisdiction over the "land-disturbing activity."

I

[1]  Pursuant to the North Carolina Sedimentation Pollution Control Act of 1973, N.C. Gen. Stat. § 113A-50 to -71 (1989), the City adopted an ordinance to establish and permit enforcement of an erosion and sedimentation control program for the City. The stated purpose of the ordinance was to regulate, within the City's jurisdiction, certain "land-disturbing activity" in an effort to "control accelerated erosion and sedimentation in order to prevent the pollution of water and other damage to lakes, water-courses, and other public and private property by sedimentation." City of Asheville, N.C., Code § 8-72 (1984). The ordinance excepted from its coverage "land-disturbing activities over which the state by statute, has exclusive regulatory jurisdiction." *Id.* § 8-74(d). The State has exclusive regulatory jurisdiction over all "land-disturbing activities" which are:

(1) Conducted by the State;

(2) Conducted by the United States;

(3) Conducted by persons having the power of eminent domain;

(4) Conducted by local governments; or

(5) Funded in whole or in part by the State or the United States.

N.C.G.S. § 113A-56(a)(1) to (5) (1989).

CITY OF ASHEVILLE v. WOODBERRY ASSOCIATES

[114 N.C. App. 377 (1994)]

A "land-disturbing activity" is defined by state statute as "any use of the land by any person in residential, industrial, educational, institutional or commercial development, highway and road construction and maintenance that results in a change in the natural cover or topography and that may cause or contribute to sedimentation." N.C.G.S. § 113A-52(6) (Supp. 1993). The City's ordinance defines "land-disturbing activity" using essentially the same language. City of Asheville, N.C., Code § 8-73(o).

There is no dispute that the construction of the project involved "land-disturbing" activities, and indeed, the cutting and filling of the slopes on the project site, as well as the removal of the trees, constitute "land-disturbing" activities within the meaning of the ordinance and the statute. The parties do dispute, however, whether this "land-disturbing activity" was "[f]unded in whole or in part by the State or the United States."

"Funded," although not defined in either the ordinance or the statute, is not ambiguous and must therefore be given its plain and ordinary meaning. *State ex rel. Utilities Commission v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977). A common dictionary definition, which can be used to establish the plain meaning of a word, for the verb "fund" is "to provide funds for." *Webster's New World Dictionary* 241 (1990). The noun "funds" is defined as a "sum of money set aside for a [specific] purpose." *Id.; see also Black's Law Dictionary* 673 (6th ed. 1990). Thus if the State or United States provides a sum of money to be used for the purpose of construction, which involves some "land-disturbing activity," the governmental entity has "funded" that "land-disturbing activity" within the meaning of Section 113A-56(a)(5).

## HUD Guarantee of the Deed of Trust

Defendant first argues that because the loan on the project site was insured by HUD it was "funded" by the United States. We disagree. Even if we assume that HUD's insuring of the loan involves some federal spending, *see Conille v. Secretary of Housing and Urban Dev.*, 840 F.2d 105, 113 (1st Cir. 1988), that money was not used for the construction of the project but was instead used to induce some other party to provide money for the construction of the project. Although the federal spending is somewhat related to the construction of the project, we believe it is too remote to qualify as funding within the meaning of Section 113A-56(a)(5).

CITY OF ASHEVILLE v. WOODBERRY ASSOCIATES

[114 N.C. App. 377 (1994)]

Furthermore, because the "land-disturbing activity" at issue in this case occurred before 1990, it is immaterial that HUD purchased the note and deed of trust in 1990 and after that date attempted to correct the sedimentation and erosion problems. The expenditure of federal funds in an attempt to correct problems caused by earlier "land-disturbing activity" does not qualify as federal funding of the earlier "land-disturbing activity" and there is no claim by the City in this case that HUD's efforts to correct the problems are themselves "land-disturbing" activities within the meaning of the ordinance.

### The $15,000 Grant

Defendant next argues that because it received a $15,000 grant from the NCHFA, the project was partially "funded" by the United States. We disagree. We agree that a grant, funded with either federal or state monies, does qualify as funding within the meaning of Section 113A-56(a)(5). In this instance, however, the grant monies were not used to fund any "land-disturbing" activities on the project site. The money from the grant was to be used, and was in fact used, to install water and sewer lines to the project site. The defendant is not charged with violating the ordinance with regard to the off-site "land-disturbing" activities related to the installation of the water and sewer lines to the project site. The violations in this case relate to "land-disturbing" activities on the project site.

Accordingly, the regulation of the "land-disturbing activity" by defendant on the project site during those periods of time at issue in this action was within the jurisdiction of the City. The trial court thus correctly denied the defendant's motions to dismiss.

### II

[2]  The defendant contends in the alternative that the judgment signed by Judge Allen is void because it was entered out of session without the consent of the parties. We disagree. Generally, absent consent of the parties, an order of the superior court must be entered "during the term, during the session, in the county and in the judicial district where the hearing was held." *State v. Boone*, 310 N.C. 284, 287, 311 S.E.2d 552, 555 (1984). An order entered in violation of this rule is "null and void and of no legal effect." *Id.; Capital Outdoor Advertising, Inc. v. City of Raleigh*, 109 N.C. App. 399, 401, 427 S.E.2d 154, 155, *disc. rev. allowed*, 333 N.C.

789, 430 S.E.2d 424 (1993). If, however, consent of the parties to entry outside the session appears "by fair implication from what appears in the record," *Capital Outdoor*, 109 N.C. App. at 401, 427 S.E.2d at 155 (quoting *Godwin v. Monds*, 101 N.C. 354, 355, 7 S.E. 793, 794 (1888)), the judgment is valid.

In this case, the record does not indicate that the judgment was entered within the session in which the case was tried. Furthermore, there is no writing signed by the parties consenting to the entry outside the session and the judgment does not recite the consent of the parties to that effect. The record does show that at the end of the trial, which occurred on Wednesday, 9 December 1992, Judge Allen indicated that it might be a "week or so" before he decided the case and there was no objection. Thus it appears "by fair implication" that the parties consented to the entry outside the session and this assignment is overruled.

Because the City of Asheville had jurisdiction to regulate the "land-disturbing activity" in question, and because the record reveals a fair implication that defendant consented to entry of the order out of session, the decision of the superior court is

Affirmed.

Judge COZORT concurs.

Judge ORR concurs with separate opinion.

Judge ORR concurring.

While I concur that the issues raised by the defendant are correctly decided by the majority, I am troubled by the City's reliance on Section 8-77 of the Code as a basis for the violation in question. Section 8-77 deals with the mandatory standards for "land-disturbing activity." According to the trial court's finding of fact number seven, "Immediately following completion of the project, the Defendant was in compliance with the plans and specifications of the land disturbing permit."

Therefore, any subsequent complaints against the defendant would appear to fall under Section 8-82 "Responsibility for maintenance." The responsibility for installation and maintenance for all necessary permanent erosion and sedimentation control

measures falls on the land owner or persons in possession or control of the land. Whether this makes any difference is unclear. However, in light of the claim by the defendant that the federal government is in control of the land by virtue of the purchase of the note and deed of trust, calls into question, at least in my opinion, the validity of the assessment of damages against this defendant.